**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UIP Limited, L.L.C., an Arizona limited liability company, <br><br> Plaintiff/Counterdefendant, <br><br> vs. <br><br> Lincoln National Life Insurance Company, an Indiana corporation, <br><br> Defendant/Counterclaimant. | No. CV-09-0006-PHX-NVW <br><br> **ORDER** <br><br> [Not for Publication] |

Pending before the Court is Defendant Lincoln National Life Insurance Company's ("Lincoln") Motion for Attorneys' Fees and Expenses (doc. # 77). In connection with the motion, the Court has considered Lincoln's Memorandum (doc. # 80), Supplemental Exhibits (doc. # 82), and Supplemental Statement of Consultation (doc. # 84), Plaintiff UIP Limited, L.L.C.'s ("UIP") Response (doc. # 83), and Lincoln's Reply (doc. # 85).

**I.  Eligibility**

On January 5, 2009, UIP sued Lincoln as successor-in-interest to Jefferson-Pilot Life Insurance Company ("Jefferson-Pilot"). The complaint sought declaratory judgment as to the interpretation of a prepayment premium provision in a non-recourse promissory note signed by UIP in exchange for a commercial loan from Jefferson-Pilot. Lincoln counterclaimed for declaratory judgment in its favor. In what proved to be a very close

1  decision, the Court rendered judgment in favor of Lincoln on November 30, 2009.  (Doc.
2  # 75.)  Though Lincoln's interpretation was more consistent with evidence of the parties'
3  general intent, it was barely plausible under the language of the provision, which was
4  arguably more consistent with UIP's interpretation.

As the undisputed prevailing party, Lincoln seeks $214,084.22 in attorneys' fees and expenses pursuant to the terms of the promissory note and A.R.S. § 12-341.01.  The amount sought includes $18,667.98 in fees incurred in preparing the fee application.

**II.  Promissory Note**

Under Arizona law, courts have no discretion to refuse an award of fees where a contract between the parties obligates the losing party to pay the prevailing party's fees and expenses.  *See Chase Bank v. Acosta*, 179 Ariz. 563, 575, 880 P.2d 1109, 1121 (Ct. App. 1994) ("Unlike fees awarded under A.R.S. § 12-341.01(A), the court lacks discretion to refuse to award fees under [a] contractual provision."); *see also McDowell Mountain Ranch Cmty. Ass'n v. Simons*, 216 Ariz. 266, 269, 165 P.3d 667, 670 (Ct. App. 2007) (same).

Lincoln argues it is entitled to a mandatory award of fees pursuant to Section 8(b) of the promissory note.  Section 8, entitled "Payment of Taxes and Expenses," states in its entirety:

> (a)  Maker further promises to pay to Holder, immediately upon written notice from Holder, (i) all recordation, transfer, stamp, documentary or other fees or taxes levied on Holder (exclusive of Holder's income taxes) by reason of the making or recording of this Note, the Indenture or any of the other Loan Documents, and (ii) all intangible property taxes levied upon any Holder of this Note or mortgagee, beneficiary, or lender under the Indenture or secured party under the other Loan Documents.
>
> (b)  Maker further promises to pay to Holder . . . all actual costs, expenses, disbursements, escrow fees, title charges and reasonable legal fees and expenses actually incurred by Holder and its counsel in (i) the collection or attempted collection following an Event of Default, or negotiation and documentation of any settlement or workout of the principal amount of this Note, the interest thereon or any installment or other payment due hereunder, and (ii) in any suit or proceeding whatsoever in regard to this Note or to protect or sustain any instrument securing this Note following an Event of Default, including, without limitation, in any bankruptcy proceeding or judicial or nonjudicial foreclosure proceeding.  It is the intent of the parties that Maker

> pay all expenses and reasonable attorneys' fees incurred by Holder as a result of Holder's entering into the loan transaction evidenced by this Note.

Notably, this section limits Lincoln's right to payment of attorneys' fees to cases where Lincoln prevails only if that condition is implicit in the repeated phrase "following an Event of Default," and it does not entitle UIP to recover its attorneys' fees even if UIP prevails. UIP contends that Section 8(b) does not entitle Lincoln to fees for two reasons: (1) it does not apply to the parties' action for declaratory judgment, and (2) it is unconscionable if it does apply.

### A. Applicability

Section 8(b) is ambiguous, as was the prepayment premium provision at issue in the underlying action for declaratory judgment. However, a close reading, in light of the rules of construction, suggests it does not apply in this case. The first part of subsection (i) provides for an award of "reasonable legal fees and expenses actually incurred" by Lincoln in "the collection or attempted collection following an Event of Default . . . ." An "Event of Default," as defined in Section 6, includes a failure to make a payment due under the note. Because this action was not a collection or attempted collection of any payment due under the note, and because UIP was not in default when it sought declaratory judgment as to the interpretation of the note's prepayment premium provision, that subsection does not apply.

The second part of subsection (i) provides for an award of reasonable fees and expenses actually incurred by Lincoln in the "negotiation and documentation of any settlement or workout of the principal amount of this Note, the interest thereon or any installment or other payment due hereunder . . . ." That subpart does not apply for two reasons. First, the underlying action for declaratory judgment was not a negotiation or documentation of any settlement or workout. It was a legal proceeding in which the parties' respective contractual rights were determined without default having occurred. Second, the action did not involve the principal amount due under the note, the interest thereon, or any other installment or payment "due" under the note. It merely sought

- 3 -

clarification as to the amount of the prepayment premium, a payment that becomes "due" if and only if UIP, in its sole discretion, attempts to prepay the loan.

Subsection (ii) deserves closer scrutiny. It provides for an award of reasonable fees and expenses actually incurred by Lincoln "in any suit or proceeding whatsoever in regard to this Note or to protect or sustain any instrument securing this Note following an Event of Default, including, without limitation, in any bankruptcy proceeding or judicial or nonjudicial foreclosure proceeding." The ambiguity turns on whether the qualifier "following an Event of Default" modifies both suits "in regard to this Note" and suits "to protect or sustain any instrument securing this Note," or only modifies the last (suits "to protect or sustain any instrument securing this Note"). Lincoln would limit its qualifier "following an Event of Default" to suits "to protect or sustain any instrument securing this Note," leaving suits "in regard to this Note" unqualified. UIP favors the other interpretation, that fees are warranted only if the suit or proceeding follows an Event of Default. There is no evidence of actual negotiation or communicated understandings from one party to the other on the meaning of this term. Therefore, the Court is left to the text alone to find the meaning.

UIP's narrower meaning is at least as plausible as Lincoln's expansive meaning, and the context and the rules of construction favor UIP's meaning. The entire Section 8(b) contemplates fees and expenses arising from Events of Default. The term "Event of Default" is mentioned in both subsections (i) and (ii), and subsection (ii) refers to bankruptcy and foreclosure proceedings. It would be surprising to find an extreme expansion of obligation tucked into a short phrase in the middle of a long sentence otherwise dealing only with Events of Default. The title of the section, "Payment of Taxes and Expenses," further conceals Lincoln's hoped-for global fee-shifting in all litigation regardless of default. The modifier "following an Event of Default" must also apply to suits "in regard to this Note" to make sense out of Section 8(b)(ii)'s omission of an express requirement that Lincoln prevail in the covered litigation to be entitled to payment of its fees. By hypothesis Lincoln is the prevailing party if there has been an

- 4 -

"Event of Default," so it is unnecessary to state the requirement that Lincoln prevail if the fee-shifting applies only to cases "following an Event of Default." Severing the Event of Default qualifier from any suit "in regard to this Note" would silently and unconscionably entitle Lincoln to shift fees in cases it loses–a surprising, onerous, and highly improbable interpretation. Therefore, UIP's interpretation prevails. Because UIP was not in default when this action was initiated, Section 8(b)(ii) does not apply here.

Lincoln argues that the final sentence of the section removes all doubt to the extent any remains. It provides, "It is the intent of the parties that Maker pay all expenses and reasonable attorneys' fees incurred by Holder as a result of Holder's entering into the loan transaction evidenced by this Note." But this sentence too is ambiguous in several ways. It is most probably read in light of the usual commercial practice, evidenced in this transaction, of requiring the borrower to pay all the lender's out-of-pocket expenses in connection with making the loan. This sentence thus sheds light primarily on Section 8(b)(i), which requires exactly that. It is much more of a stretch to take the words "as a result of Holder's entering into the loan transaction" as meaning fee-shifting in an action for declaratory judgment that did not arise from default. The language is also unusual compared to language routinely used in commercial practice to shift fees and expenses incurred in litigation. Lincoln's "entering into the loan transaction" is quite remote from a declaratory judgment proceeding that is proximately "as a result of" Lincoln's bad drafting of the prepayment premium provision that said what UIP contended but did not fit the commercial context. On balance, it is less than persuasive to read this sentence as stripping the default-basis out of the fee-shifting of Section 8(b)(ii).

Furthermore, to the extent the scope of Section 8(b) is uncertain, UIP must receive the benefit of the doubt for two reasons. First, Lincoln was responsible for drafting it. Second, this Court's decision in the underlying action was at the edge of reformation and made necessary entirely by Lincoln's poor drafting. Though evidence of the parties' general intent as to the operation of the prepayment premium provision weighed in Lincoln's favor, the language of the provision had to be crow-barred to accommodate

Lincoln's interpretation. Therefore, Section 8(b) does not entitle Lincoln to a mandatory award of fees and expenses in this case.

### B. Unconscionability

In Arizona, if a court finds as a matter of law that a contractual provision was "unconscionable at the time it was made," the court may refuse to enforce it. A.R.S. § 47-2302; *see also Estate of Nelson v. Rice*, 198 Ariz. 563, 568, 12 P.3d 238, 243 (Ct. App. 2000) (emphasizing that unconscionability is determined as of the time the parties entered into the contract). A claim of unconscionability may rest solely on a showing of substantive unconscionability, which "concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Maxwell v. Fidelity Fin. Servs., Inc.*, 184 Ariz. 82, 89-90, 907 P.2d 51, 58-59 (1995). "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.* at 89, 907 P.2d at 58.

As previously suggested, Lincoln's interpretation severing the condition "Event of Default" from fee recovery under Section 8(b)(ii) would require UIP to pay both its own attorneys' fees and Lincoln's even if UIP prevailed in the litigation. That interpretation would render the provision unconscionable and therefore unenforceable. Lincoln responds only that fee provisions are not unconscionable in general; it does not respond to the specific argument that a provision for recovery of fees in failed cases is unconscionable. Lincoln's interpretation of Section 8(b)(ii) is unconscionable and would prevent its enforcement even if it did apply.

### III. A.R.S. § 12-341.01(A)

In the absence of an enforceable fee-shifting contractual provision, courts have discretion in contract cases to award fees and expenses pursuant to A.R.S. § 12-341.01(A), which provides, "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." In determining whether to award fees, courts consider the following factors:

1) the merits of the unsuccessful party's claim,
2) whether the successful party's efforts were completely superfluous in achieving the ultimate result;
3) whether assessing fees against the unsuccessful party would cause extreme hardship,
4) whether the successful party prevailed with respect to all relief sought,
5) whether the legal question presented was novel or had been previously adjudicated in this jurisdiction, and
6) whether a fee award would discourage other parties with tenable claims or defenses from litigating.

*See Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985); *Valarde v. Pace Membership Warehouse, Inc.*, 105 F.3d 1313, 1319-20 (9th Cir. 1997).

Because this action arose from a promissory note, A.R.S. § 12-341.01(A) applies. However, several of the factors weigh in favor of denying an award of fees and expenses in this case. First, UIP's claim was meritorious. While Lincoln's interpretation of the prepayment premium provision was more correct in light of evidence of the parties' intent, UIP's interpretation was arguably more correct solely in light of the language of the provision. Though Lincoln ultimately prevailed on all the relief sought, the decision was very close and pushed the bounds of contract interpretation.

Second, the legal question presented was novel. No Arizona cases were found interpreting a prepayment premium provision similar to the one in the parties' promissory note. In fact, very few cases were found interpreting any prepayment premium provision. In sum, there was very little authority to guide UIP in evaluating the merits of its claim. Though contract interpretation as a whole is nothing new, the interpretation of the provision at issue was certainly novel and far from clear-cut.

Finally, though assessing fees against UIP will likely not cause extreme hardship in light of its ability and attempt to prepay the loan at issue, a fee award in this case would likely discourage other parties with tenable claims from seeking declaratory judgment as to the interpretation of an ambiguous contract term. As explained above, UIP's claim was meritorious enough for the Court to grapple with subtle distinctions between contract interpretation and reformation. Therefore, the Court will discretionarily deny fees and expenses incurred by Lincoln in the underlying action.

Though the amount of attorneys' fees and expenses sought by Lincoln appears excessive in light of the nature of the case, the Court's decision that Lincoln is not entitled to an award of fees and expenses obviates the need to address reasonableness of the amount claimed.

IT IS THEREFORE ORDERED that Lincoln's Motion for Attorneys' Fees and Expenses (doc. # 77) is denied.

DATED this 17th day of March, 2010.

_____
Neil V. Wake
United States District Judge